# IN THE UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| MARCUS LEMONIS,<br><br>    Plaintiff,<br><br>v.<br><br>A. STEIN MEAT PRODUCTS INC.,<br>HOWARD MORA, ALAN BUXBAUM<br>and KING SOLOMON FOODS, INC.,<br><br>    Defendants. | No. _____ |

## COMPLAINT

Plaintiff MARCUS LEMONIS ("Lemonis"), by his attorneys Dentons US LLP, for his Complaint against defendants A. STEIN MEAT PRODUCTS INC. ("Stein Meats"), HOWARD MORA ("Mora"), ALAN BUXBAUM ("Buxbaum"), and KING SOLOMON FOODS, INC. ("King Solomon") (collectively, "Defendants") states as follows:

## NATURE OF THE CASE

1. This is an action to enforce the straightforward, bargained-for agreement entered into by and between defendant Stein Meats and Lemonis, by which Stein Meats agreed to sell its "Brooklyn Burgers" brand of hamburgers to Lemonis. The agreement is unequivocal, and was witnessed by the millions of viewers who have watched Episode 2 of the second season of the CNBC reality television series "The Profit" that first aired on March 4, 2014. During that episode, Lemonis, a seasoned businessman and entrepreneur who is expert at turning around failing businesses, agreed to Stein Meats' request—conveyed through its principals, Mora and Buxbaum—for an emergency cash infusion of approximately $200,000 (the amount later was set at $190,000), in consideration for which Lemonis agreed to "*buy* Brooklyn Burgers."

- 1 -

2.     Lemonis has lived up to his part of the bargain: he conveyed $190,000 to Stein Meats via two wire transfers, dated November 20, 2013 and January 8, 2014. Mora and Buxbaum, however, have failed to deliver to Lemonis the Brooklyn Burger brand he purchased. Rather, they have continuously tried to evade the deal they reached. Mora and Buxbaum first tried to portray Lemonis' payment as a "loan"—although the parties never discussed any loan terms and Lemonis unequivocally and repeatedly stated that he was paying to *buy* Brooklyn Burger. Having accepted Lemonis' money that saved their company from the brink of bankruptcy, and unable to recast the deal to their liking, Mora and Buxbaum are now refusing to abide by the terms of the agreed upon deal.

3.     To add insult to injury, Lemonis has learned that Stein Meats is negotiating to sell its business, including Brooklyn Burger, to defendant King Solomon. In connection with this sale, King Solomon requested that Lemonis waive his rights to the Brooklyn Burger brand. Lemonis refused to do so. King Solomon is fully aware of Lemonis' rights in Brooklyn Burger, yet it continues to negotiate the sale of that brand with Stein Meats. King Solomon is intentionally interfering with Lemonis' rights in and to Brooklyn Burger.

4.     Lemonis indisputably is entitled to specific performance on his agreement to purchase Brooklyn Burger and absent such performance he will lose a planned centerpiece in his growing food business. Lemonis plans to market and sell Brooklyn Burger products in supermarkets across the United States (Stein Meats has only sold their burgers locally) as part of his more global food business and offerings, as he recognizes that this unique and renowned brand will allow him to establish a foothold for additional products and services. The business opportunities Lemonis stands to lose if Stein Meats fails to relinquish Brooklyn Burger to him are therefore immeasurable.

5. Lemonis therefore seeks a judgment that: a) enforces the agreement by which Stein Meats sold to Lemonis the Brooklyn Burger brand; b) prevents Stein Meats from selling or otherwise transferring the Brooklyn Burger brand to King Solomon or any other third party; and c) grants immediate possession of the Brooklyn Burger brand, and any and all associated intellectual property and other property, to Lemonis. In the alternative, Lemonis seeks no less than $190,000 in damages, exclusive of pre- and post-judgment interest, as Stein Meats has improperly kept the money Lemonis wired to purchase Brooklyn Burger, and both Stein Meats and King Solomon have intentionally and wrongfully deprived Lemonis of the opportunity to market and sell Brooklyn Burger, and grow his food business around that brand.

## THE PARTIES

6. Plaintiff Marcus Lemonis is a resident of the state of Illinois. Since 2013, Lemonis has appeared as the host of "The Profit," a CNBC reality television show about saving small businesses. Lemonis has been described as a "serial entrepreneur," with a proven track record of helping to turn around troubled businesses.

7. Defendant A. Stein Meat Products Inc. is a domestic business corporation organized under the laws of the state of New York, with its principal place of business at 5600 First Avenue, Building B, Brooklyn, NY 11220. Stein Meats markets and sells, among other products, the Brooklyn Burger brand of hamburger products. Stein Meats has touted Brooklyn Burger as the official burger of the Brooklyn Nets, New York Yankees, and New York Mets.

8. Defendant Howard Mora is the Chief Executive Officer and co-owner of Stein Meats. Upon information and belief, Mora is a resident of the State of New York.

9. Defendant Alan Buxbaum is co-owner of Stein Meats. Upon information and belief, Buxbaum is a resident of the State of New York.

10. Defendant King Solomon Foods, Inc. is a domestic business corporation organized under the laws of the state of New York, with its principal place of business at 5600 First Avenue, Suite 2, Brooklyn, NY 11220.

## JURISDICTION AND VENUE

11. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1332, in that the citizenship of Lemonis and Defendants is diverse, and the amount in controversy exceeds $75,000.

12. Pursuant to 28 U.S.C. §1391, venue properly lies in this District because Defendants' relevant business divisions are headquartered in Brooklyn, New York, all Defendants reside in New York, and a substantial part of the events giving rise to Lemonis' claims occurred in this District.

## BACKGROUND FACTS

13. Lemonis is the host of "The Profit," a reality television series broadcast on CNBC that premiered on July 30, 2013. On each episode, Lemonis offers a struggling small business his expertise, advice and, potentially, an investment in that company.

14. Any investment made by Lemonis through the show is the result of good faith negotiations between the company and Lemonis. All terms of Lemonis' investments are a matter of agreement between Lemonis and that company and/or its principals.

15. All investments made by Lemonis in companies that appear on "The Profit" are made using his personal funds.

16. Lemonis' consultations with each company that appears on the series are a good faith attempt to rehabilitate that company beyond its involvement with "The Profit." Such rehabilitation, however, is contingent upon the struggling company's adherence to Lemonis' advice and the agreements struck between Lemonis and the company.

17. Stein Meats is one such struggling company that sought out Lemonis. In connection with the episode of "The Profit" involving defendants Stein Meats, Mora, and Buxbaum that first aired on March 4, 2014, Lemonis consulted and negotiated with Mora, Buxbaum, and other employees of Stein Meats in an effort to turn around Stein Meats' failing business.

18. Lemonis spent considerable time personally observing Stein Meats' operations, talking to the company's employees, reviewing financial information, and discussing operations and strategy with Moran and Buxbaum, all with an eye toward seeing if there was a way to reverse Stein Meats' financial troubles and save the jobs of its employees.

19. After Mora and Buxbaum represented to Lemonis that Stein Meats was a "$50 million business," and after Lemonis was shown selected information concerning Stein Meats' receivables and payables, Lemonis offered to pay $1 million for a 50% ownership interest in Stein Meats.

20. Upon further investigation, however, including an audit of Stein Meats' financial information, Lemonis learned that Stein Meats was experiencing significant cash flow and working capital problems and had over $7.8 million in debt. With total assets of only $5 million—a figure that assumed Stein Meats was able to collect on all of its receivables—Stein Meats' level of insolvency was nearly $3 million. Based on Lemonis' calculations, Stein Meats had only enough cash to remain in business for roughly two weeks.

21. Given the depth of Stein Meats' financial problems and misrepresentations regarding the financial statements, Lemonis could no longer justify his original $1 million offer. Rather than leave Stein Meats completely in the lurch and 37 employees without a job, however, Lemonis offered—and Stein Meats, through Mora and Buxbaum, agreed—to "buy Brooklyn

Burger" in exchange for approximately $200,000, which would allow Stein Meats to meet its payroll and other immediate obligations, and provide working capital for continued operations. The discussion that led to the oral agreement at issue aired on the March 4, 2014 episode of "The Profit." As transcribed from that episode, the critical discussion happened as follows:

> Mora: We need money for payroll and for our working capital. That's very important at this point because we want to be here tomorrow.
>
> Lemonis: How much do you need?
>
> Mora: About $200,000.
>
> \* \* \* \*
>
> Lemonis: You know I can't just give you the money. I can't just write you a check and give you a gift, as much as I like you guys. I'm not a consultant. I do things to save jobs and to make money. I don't just hand money out. And so in order for me to give you that money I'm gonna need to get a return on my money. And the only thing that I can think of is that ***I buy Brooklyn Burgers from you. And I'll repackage it and I'll get it back on its feet.***
>
> Mora: We're willing to do whatever it takes.

22. The agreement could not have been more clear: this was no loan, this was no "gift." This was a sale of the Brooklyn Burger brand from Stein Meats to Lemonis.

23. After further discussions between the parties, the parties agreed that Lemonis' purchase price would be $190,000 to satisfy the payroll and working capital needs.

### STEIN MEATS VIOLATES THE AGREEMENT OF SALE

24. Lemonis has performed his portion of the agreement in full. He wired $190,000 as consideration for the Brooklyn Burger brand via two wire transfers to defendant Stein Meats, the first on November 20, 2013 in the amount of $100,000 and the second on January 8, 2014 in the amount of $90,000.

25. Stein Meats, through Mora and Buxbaum, accepted those wire transfers.

26. Stein Meats has not performed its end of the deal. It has taken no action to transfer to Lemonis any of the rights, intellectual property, or other assets associated with the Brooklyn Burger brand.

27. In response to repeated inquiries from Lemonis, Stein Meats has repeatedly tried to back out of the agreement it made. First, Stein Meats stated that it would return the money Lemonis paid, incorrectly characterizing Lemonis' purchase price as a "loan." Lemonis made clear that his payment was not a "loan." Indeed, the parties never discussed loan terms of any kind, and in any event, Stein Meats has never returned a dime to Lemonis. Notwithstanding Lemonis' express admonition to Mora and Buxbaum that he would not simply "gift" money to them, they apparently believe that Lemonis in fact gave them money for nothing.

28. To be clear, Lemonis did not acquire the Brooklyn Burger brand because he was enamored of its products' taste. Lemonis plans to make the Brooklyn Burger brand a centerpiece of his growing food enterprises, in part by expanding the brand into a national concern.

29. Stein Meats' wrongful breach of contract threatens Lemonis' plans. Moreover, Lemonis soon may have no means of redress for this breach. On information and belief, Stein Meats is negotiating to sell its business, including the Brooklyn Burger brand, to defendant King Solomon. Well aware that Lemonis is the rightful owner of Brooklyn Burger, on or about April 9, 2014 King Solomon requested that Lemonis relinquish his rights to the brand—for no consideration whatsoever. Lemonis has declined to cede his lawful rights in and to Brooklyn Burger.

## COUNT I

## BREACH OF CONTRACT/SPECIFIC PERFORMANCE
## (AGAINST DEFENDANT STEIN MEATS)

30. Lemonis hereby realleges, as if fully set forth herein, the allegations contained in paragraphs 1 through 29.

31. Stein Meats is subject to a valid and enforceable agreement of sale, by which it, through Mora and Buxbaum, agreed to sell the Brooklyn Burger brand to Lemonis for $190,000. This agreement was made when Mora requested from Lemonis "about $200,000," which would keep Stein Meats in business, in exchange for which Lemonis offered to "buy Brooklyn Burgers from you." Mora accepted the terms on the spot, and Stein Meats readily accepted the purchase price, which later was set at $190,000.

32. Lemonis performed in full under the contract, as he paid Stein Meats $190,000 by wire transfers dated November 20, 2013 and January 8, 2014. Stein Meats thus received adequate and sufficient consideration for entering into the agreement at issue.

33. It is within Stein Meats' power to perform on the agreement, as it presently owns and controls the rights to the Brooklyn Burger brand and can relinquish that brand to Lemonis.

34. While Lemonis has performed all of his obligations under the agreement of sale, Stein Meats has not turned over any of its interest in and to the Brooklyn Burger brand. Stein Meats has thus materially breached the agreement of sale.

35. On information and belief, Stein Meats is negotiating with defendant King Solomon to sell its Brooklyn Burger brand to King Solomon. This constitutes a further continuing and anticipatory breach of the agreement of sale.

36. By these acts, Stein Meats has violated the explicit terms of the agreement of sale, thus entitling Stein Meats to specific performance on the contracts.

37. While the Brooklyn Burger brand is a profitable portion of Stein Meats' business, Lemonis' plan to turn that brand into a national concern has the potential to generate additional millions of dollars in revenue—not only for Brooklyn Burger itself, but for Lemonis' other food-related businesses that will benefit from the goodwill afforded by their association with the unique and renowned Brooklyn Burger brand. Stein Meats' breach of the agreement of sale would be fatal to Lemonis' strategy and therefore will cause Lemonis irreparable harm for which there is no adequate remedy at law.

38. Lemonis is therefore entitled to specific performance of the agreement and intends to take control of the Brooklyn Burger brand.

WHEREFORE, Lemonis prays that the Court:

1. Order specific performance of Stein Meats' obligation under the agreement of sale to relinquish any and all of its rights, title, and interests in and to the Brooklyn Burger brand to Lemonis.

2. Award Lemonis his costs and attorneys' fees; and

3. Award Lemonis such other and further relief as the Court deems just and proper.

## COUNT II

## PRELIMINARY INJUNCTION

39. Lemonis hereby realleges, as if fully set forth herein, the allegations contained in paragraphs 1 through 38.

40. Lemonis seeks an injunction to prevent Stein Meats from selling its rights in and to, and intellectual property or other property associated with, the Brooklyn Burger brand to

King Solomon, or from otherwise secreting or disposing of its interests in the Brooklyn Burger brand other than to Lemonis pursuant to the agreement of sale.

41. Stein Meats is party to a valid and enforceable contract by which it agreed to sell the Brooklyn Burger brand to Lemonis for $190,000. Lemonis performed in full under the contract, as he wired to Stein Meats $190,000 by wire transfers dated November 20, 2013 and January 8, 2014.

42. Notwithstanding Stein Meats' clear contractual obligation, it has refused and continues to refuse to relinquish the Brooklyn Burger brand to Lemonis, in breach of the explicit terms of its agreement with Lemonis. Lemonis is entitled to specific performance of the agreement and intends to take control of the Brooklyn Burger brand.

43. Furthermore, Stein Meats is negotiating to sell the Brooklyn Burger brand to defendant King Solomon. Absent injunctive relief, defendants Stein Meats and King Solomon will vitiate Lemonis' ability to obtain the benefits of his bargain to acquire Brooklyn Burger.

44. Absent injunctive relief, Stein Meats' breach of the agreement of sale would be fatal to Lemonis' strategy to utilize the Brooklyn Burger brand as a centerpiece of his growing food business, and therefore will cause Lemonis irreparable harm for which there is no adequate remedy at law.

45. Since Stein Meats has retained both the Brooklyn Burger brand *and* the $190,000 Lemonis paid for the brand, and since Stein Meats is negotiating to sell the brand to King Solomon, the balance of harm favors Lemonis.

46. Furthermore, because the harm arises from Stein Meats' clear contractual obligation to relinquish the Brooklyn Burger brand to Lemonis, Lemonis is likely to succeed on

the merits of his claim for specific performance and it is in the public interest to grant the requested injunction.

WHEREFORE, Lemonis prays that the Court:

1. Enter preliminary and permanent injunctive relief prohibiting Stein Meats from transferring, secreting, or disposing of any of its interest in the Brooklyn Burger brand in its possession, custody, or control, whether to King Solomon or another third party.

2. To the extent that Stein Meats has already transferred, secreted, or disposed of any of its interest in the Brooklyn Burger, enter an order that immediately returns the Brooklyn Burger brand, and any and all associated intellectual property and other property, to Lemonis.

## COUNT III

### CONVERSION AND REPLEVIN
### (AGAINST DEFENDANTS STEIN MEATS, MORA, AND BUXBAUM)

47. Lemonis hereby realleges, as if fully set forth herein, the allegations contained in paragraphs 1 through 46.

48. Lemonis wired $190,000 to Stein Meats in two installments, the first on November 20, 2013 in the amount of $100,000 and the second on January 8, 2014 in the amount of $90,000. Stein Meats has simply kept the money, without providing Lemonis anything in return.

49. Lemonis has made numerous demands of Stein Meats, through defendants Mora and Buxbaum, to turn over the Brooklyn Burger brand. Their refusal to do so has denied Lemonis possession and use of the property to which he is entitled.

50. On information and belief, Stein Meats has agreed to sell its business, including the Brooklyn Burger brand, to defendant King Solomon. Such sale would further deny Lemonis possession of the Brooklyn Burger brand that he has bought and paid for.

51. Lemonis is entitled to possession of the Brooklyn Burger brand he has bought and paid for.

WHEREFORE, Lemonis prays that the Court:

1. Issue a judgment in favor of Lemonis on his claim for conversion relating to Stein Meats' wrongful withholding of the Brooklyn Burger brand.

2. Enter an order granting immediate possession of the Brooklyn Burger brand, and any and all associated intellectual property and other property to Lemonis.

3. In the alternative, enter an order granting Lemonis no less than $190,000 in damages, exclusive of pre- and post-judgment interest, as Stein Meats has improperly converted the money Lemonis wired to purchase Brooklyn Burger.

4. Award Lemonis his costs and attorneys' fees; and

5. Award Lemonis such other and further relief as the Court deems just and proper.

## COUNT IV

### UNJUST ENRICHMENT
### (AGAINST DEFENDANTS STEIN MEATS, MORA, AND BUXBAUM)

52. Lemonis hereby realleges, as if fully set forth herein, the allegations contained in paragraphs 1 through 51.

53. On November 20, 2013 and January 8, 2014 Lemonis wired a total of $190,000 to defendant Stein Meats for the Brooklyn Burger brand. Lemonis reasonably expected to receive the Brooklyn Burger brand in return for the money he paid.

54. Stein Meats, through Mora and Buxbaum, accepted those wire transfers.

55. In refusing to relinquish control of Brooklyn Burger, Stein Meats continues to be enriched at Lemonis' expense, including by collecting all proceeds with respect to the sale of Brooklyn Burger products, and by including the brand in the sale of Stein Meats' business to King Solomon. Lemonis has been denied the ability to use the brand in his expansion plans for his food businesses.

56. It is unconscionable for Stein Meats to continue to enjoy the benefit of Brooklyn Burger, as well as the $190,000 which Lemonis has already paid to Stein Meats. Restitution should be made to Lemonis in equity and good conscience.

WHEREFORE, Lemonis prays that the Court:

1. Issue a judgment in favor of Lemonis on his claim for unjust enrichment relating to Stein Meats' wrongful withholding of the Brooklyn Burger brand.

2. Award Lemonis his costs and attorneys' fees; and

3. Award Lemonis such other and further relief as the Court deems just and proper.

## COUNT V

### TORTIOUS INTERFERENCE WITH CONTRACT (AGAINST DEFENDANT KING SOLOMON)

57. Lemonis hereby realleges, as if fully set forth herein, the allegations contained in paragraphs 1 through 56.

58. There exists a valid and enforceable agreement of sale, by which Stein Meats, through Mora and Buxbaum, agreed to sell the Brooklyn Burger brand to Lemonis for $190,000.

59. King Solomon knows of this agreement for sale. In connection with its negotiations with Stein Meats for its assets, King Solomon requested that Lemonis waive his rights to the Brooklyn Burger brand. Lemonis refused to do so.

60. King Solomon is fully aware of Lemonis' rights in Brooklyn Burger yet continues to negotiate the sale of that brand with Stein Meats. King Solomon does so knowing that Lemonis refuses to waive his rights to Brooklyn Burger. This intentional inducement of Stein Meats to breach its duty to relinquish Brooklyn Burger to Lemonis will deny Lemonis of his rightful ownership of that brand.

61. As a result of King Solomon's intentional and wrongful conduct, Lemonis has been damaged in an amount to be proven at trial, but in all events, no less than $190,000.

WHEREFORE, Lemonis prays that the Court:

1. Issue a judgment in favor of and award damages to Lemonis on his claim of tortious interference with contract relating to King Solomon's negotiations with Stein Meats for the sale of Brooklyn Burger and other assets.

2. Award Lemonis his costs and attorneys' fees; and

3. Award Lemonis such other and further relief as the Court deems just and proper.

Dentons US LLP

By: _____
Justin N. Kattan

1221 Avenue of the Americas
New York, New York 10020
(212) 768-6700 (phone)
(212) 768-6800 (fax)
justin.kattan@dentons.com

*Attorneys for Plaintiff*