# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF NEW YORK

MARCUS LEMONIS,

               Plaintiff,

    v.

A. STEIN MEAT PRODUCTS INC.,
HOWARD MORA, ALAN BUXBAUM,
And KING SOLOMON FOODS, INC.,

               Defendants.

Index No. 14-cv-03073 (DLI) (RLM)

**MEMORANDUM OF LAW IN SUPPORT OF THE MOTION TO DISMISS BY
A. STEIN MEAT PRODUCTS INC., HOWARD MORA, AND ALAN BUXBAUM**

BECKER, GLYNN, MUFFLY, CHASSIN AND HOSINSKI LLP

299 PARK AVENUE

NEW YORK, NEW YORK 10171

(212) 888-3033

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ..................................................................................................... iii

PRELIMINARY STATEMENT .............................................................................................. 1

STATEMENT OF ALLEGED FACTS .................................................................................... 2

ARGUMENT ............................................................................................................................ 6

   I.     LEGAL STANDARD .................................................................................... 6

   II.    THE PLAINTIFF'S BREACH OF CONTRACT CLAIM
        AGAINST A. STEIN FAILS AS A MATTER OF LAW ............................ 7

        A.   The Lanham Act Precludes an Oral Sale of the Brooklyn
            Burger Trademarks ............................................................................... 7

        B.   The Alleged Oral Contract Is Unenforceable Pursuant to
            N.Y. U.C.C. § 1-206 ............................................................................ 8

        C.   A. Stein Never Accepted Any Offer from the Plaintiff ..................... 9

   III.   THE PLAINTIFF'S CLAIM FOR AN INJUNCTION MUST
        BE DISMISSED BECAUSE IT IS A FORM OF RELIEF, NOT
        A SEPARATE CAUSE OF ACTION ......................................................... 11

   IV.   THE PLAINTIFF FAILS TO STATE CLAIMS FOR
        CONVERSION OR REPLEVIN AGAINST A. STEIN, MORA,
        AND BUXBAUM ........................................................................................ 11

        A.   The Plaintiff's Conversion and Replevin Claims
            Impermissibly Duplicate the Contract Claim ...................................... 11

        B.   The Plaintiff Has Not Alleged a Superior Right to the
            Brooklyn Burger Brand ....................................................................... 13

         C.   New York Law Does Not Recognize a Claim for
            Conversion or Replevin of Intangibles, Including
            Trademarks and Unidentifiable Cash ................................................... 13

        D.   The Plaintiff Waived His Conversion Claim for the
            $190,000 Because He Admits He Allowed A. Stein to
            Keep the Money ................................................................................... 15

V.    THE PLAINTIFF'S UNJUST ENRICHMENT CLAIM
      AGAINST A. STEIN, MORA, AND BUXBAUM MUST BE
      DISMISSED ........................................................................................... 15

      A.    The Plaintiff Fails to Identify a Breach of a Legal Duty
            Independent of the Alleged Oral Contract ........................................ 15

      B.    The Plaintiff Has Failed to State a Claim for Unjust
            Enrichment Against Mora and Buxbaum in Their
            Individual Capacities ........................................................................ 16

CONCLUSION .......................................................................................................... 18

# TABLE OF AUTHORITIES

**Cases**                                                                                                    **Page**

*2 Montauk Highway LLC v. Global Partners LP,*
   296 F.R.D. 94 (E.D.N.Y. 2013) ........................................................................... 13

*Alzheimer's Disease Resource Center, Inc. v. Alzehimer's Disease*
   *and Related Disorders Ass'n,*
   2013 WL 5960748 (E.D.N.Y. Nov. 8, 2013) ...................................................... 14

*Ashcroft v. Iqbal,*
   556 U.S. 662 (2009) ........................................................................................... 6

*Auguston v. Spry,*
   282 A.D.2d 489, 723 N.Y.S.2d 103 (2d Dep't 2001) ........................................ 14

*Bahiri v. Madison Realty Capital Advisors, LLC,*
   30 Misc.3d 1208(A), 924 N.Y.S.2d 307 (N.Y. Sup. Ct. N.Y. Cnty. 2010) ............ 14

*Brown v. Brown,*
   12 A.D.3d 176, 785 N.Y.S.2d 417 (1st Dep't 2004)........................................... 16

*Charles Hyman, Inc. v. Olsen Indus., Inc.,*
   227 A.D.2d 270, 642 N.Y.S.2d 306 (1st Dep't 1996)................................... 10, 11

*Cobble Hill Nursing Home, Inc. v. Henry and Warren Corp.,*
   74 N.Y.2d 475, 548 N.Y.S.2d 920 (1989).......................................................... 10

*Double Alpha, Inc. v. Mako Partners, L.P.,*
   2000 WL 1036034 (S.D.N.Y. July 27, 2000)..................................................... 14

*Duckett v. Ramela Distrib. Inc.,*
   2012 WL 4336165 (S.D.N.Y. Sept. 18, 2012) .................................................... 6

*Fed. Treasury Enter. Sojuzplodoimport v. SPI Spirits Ltd.,*
   726 F.3d 62 (2d Cir. 2013) ............................................................................. 7, 8

*Financial Matters, Inc. v. Pepsico, Inc.,*
   1993 WL 378844 (S.D.N.Y. Sept. 24, 1993) .................................................... 13

*Galesi v. Galesi,*
   37 A.D.3d 249, 829 N.Y.S.2d 107 (1st Dep't 2007)........................................... 10

*Grappo v. Alitalia Linee Aeree Italiane, S.p.A.*,
   56 F.3d 427 (2d Cir. 1995) ................................................................................ 9

*Harris v. Coleman*,
   863 F. Supp. 2d 336 (S.D.N.Y. 2012) ...................................................... 13, 14

*Herman v. 36 Gramercy Park Realty Assocs.*,
   2014 WL 1324544 (N.Y. Sup. Ct. N.Y. Cnty. Apr. 2, 2014).......................... 13, 14

*Huntington Dental & Med. Co. v. Minnesota Mining and Mfg. Co.*,
   1998 WL 60954 (S.D.N.Y. Feb. 13, 1998) ..................................................... 16

*Interpharm, Inc. v. Wells Fargo Bank, Nat'l Ass'n*,
   655 F.3d 136 (2d. Cir. 2011) ................................................................... 6

*Kaplan, Inc. v. Yun*,
   2014 WL 1689040 (S.D.N.Y. Apr. 30, 2014) .................................................. 6

*King v. King*,
   208 A.D.2d. 1143, 617 N.Y.S.2d 593 (3rd Dep't 1994) ............................... 9

*Levin v. Kitsis*,
   82 A.D.3d 1051, 920 N.Y.S.2d 131 (2d Dep't 2011) ................................. 17

*Mellencamp v. Riva Music Ltd.*,
   698 F. Supp. 1154 (S.D.N.Y. 1988) ............................................................ 9

*NAS Elecs., Inc. v. Transtech Elecs. PTE Ltd.*,
   262 F. Supp. 2d 134 (S.D.N.Y. 2003) .......................................................... 11

*Nasso v. Bio Reference Labs., Inc.*,
   892 F. Supp. 2d 439 (E.D.N.Y. 2012)................................................... 12, 13

*Ortega v. Burgos*,
   2014 WL 2124957 (E.D.N.Y. May 22, 2014) ........................................... 13, 14

*Pransky v. Eisner*,
   2011 WL 4753455 (E.D.N.Y. Sept. 14, 2011) ............................................. 11

*Prestige Brands Inc. v. Guardian Drug Co.*,
   951 F. Supp. 2d 441 (S.D.N.Y. 2013)........................................................... 9

*Prince of Peace Enters., Inc. v. Top Quality Food Mkt., LLC*,
   760 F. Supp. 2d 384 (S.D.N.Y. 2011) ........................................................... 8

*Priolo Commc'ns, Inc. v. MCI Telecomms. Corp.*,
   248 A.D.2d 453, 669 N.Y.S.2d 376 (2d Dep't 1998) ............................... 12, 13

*Rouzani v. Rapp*,
203 A.D.2d 446, 610 N.Y.S.2d 600 (2d Dep't 1994) ............................................. 10

*Sawabeh Info. Servs. Co. v. Brody*,
2014 WL 46479 (S.D.N.Y. Jan. 6, 2014) ............................................. 15

*Seanto Exps. v. United Arab Agencies*,
137 F. Supp. 2d 445 (S.D.N.Y. 2001) ............................................. 15

*Silverman v. Nicholson*,
110 A.D.3d 1054, 975 N.Y.S.2d 416 (2d Dep't 2013) ............................................. 17

*Spanierman Gallery, PSP v. Love*,
2003 WL 22480055 (S.D.N.Y. Oct. 31, 2003) ............................................. 12

*Telebrands Corp. v. Del Labs., Inc.*,
719 F. Supp. 2d 283 (S.D.N.Y. 2010) ............................................. 6

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
551 U.S. 308 (2007) ............................................. 6

*Transition Investments, Inc. v. The Allen O. Dragge, Jr. Family Trust*,
2012 WL 1848875 (S.D.N.Y. May 21, 2012) ............................................. 9

*United Magazine Co. v. Murdoch Magazines Distrib., Inc.*,
146 F. Supp. 2d 385 (S.D.N.Y. 2001) ............................................. 16

*United Res. Recovery Corp. v. Ramko Venture Mgmt., Inc.*,
584 F. Supp. 2d 645 (S.D.N.Y. 2008) ............................................. 16

*Usov v. Lazar*,
2013 WL 3199652 (S.D.N.Y. June 25, 2013) ............................................. 12, 16, 17

## Statutes

15 U.S.C. § 1060 ............................................. 7

FED. R. CIV. P. 12(b)(6) ............................................. 1, 6

N.Y. U.C.C. § 1-206 ............................................. 8, 9

## Other Authorities

1 MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION § 4:18 (4th ed.) ............................................. 7

BLACK'S LAW DICTIONARY (9th ed. 2009) ............................................. 7

MERRIAM-WEBSTER'S DICTIONARY ............................................. 7

A. Stein Meat Products Inc. ("A. Stein") and its principals, Howard Mora ("Mora") and Alan Buxbaum ("Buxbaum"), submit this memorandum of law in support of their motion to dismiss Marcus Lemonis's (the "Plaintiff") claims against them pursuant to FED. R. CIV. P. 12(b)(6). This memorandum is supported by the Declaration of Michelle R. Mufich, dated June 24, 2014 ("Mufich Decl."), which collects material of which this Court may take judicial notice on this motion.

## PRELIMINARY STATEMENT

The Plaintiff seeks to transform an on-air dramatization for the television show "The Profit" into a binding, definitive oral agreement by A. Stein to sell the Plaintiff its "Brooklyn Burger" brand—*i.e.*, its two trademarks—in exchange for $190,000.

The complaint rises and falls on this improbable oral contract—it is the basis of each and every cause of action asserted against A. Stein, Mora, and Buxbaum (for breach of contract, an injunction, conversion and replevin of either the trademarks or the $190,000, and unjust enrichment).

But the oral contract and each of the Plaintiff's claims are irrevocably barred as a matter of law:

***First,*** the Plaintiff's claim for breach of an alleged oral contract for the sale of A. Stein's trademarks is precluded by the Lanham Act's requirement that the contract be in writing. The claim is also unenforceable pursuant to New York's U.C.C. Statute of Frauds because it seeks specific performance of an oral agreement for the sale of "personal property" in an amount in excess of $5,000. And, in any event, the claim cannot succeed because A. Stein never accepted any offer from the Plaintiff. *See* Point II (Point I is a short description of the legal standard).

**_Second,_** the Plaintiff's claim for an injunction must be dismissed because that is a type of relief, not a separate cause of action. *See* Point III.

**_Third,_** the Plaintiff's claims for conversion and replevin, premised upon the defective oral contract, must be dismissed as duplicative of that contract claim. Nor does New York even recognize conversion or replevin of intangibles such as trademarks and unidentifiable cash. The Plaintiff also fails to state a claim for conversion of the $190,000 because he never demanded the return of the money—he admits in his complaint that he rejected A. Stein's offer to return the $190,000. *See* Point IV.

**_Fourth,_** the Plaintiff's unjust enrichment claim duplicates his breach of contract claim in the same way as his conversion/replevin claim and is just as doomed. *See* Point V.

We understand that we must assume on this motion that the Plaintiff's allegations are true. Each claim still must be dismissed as irrevocably defective. We also understand that we must pretend (for now) as though A. Stein, Mora, and Buxbaum never entered into a written contract prior to appearing on The Profit—a contract which the Plaintiff studiously ignores in his complaint. Should we ever get to trial in this litigation, that contract will prove the emptiness of the Plaintiff's claims. We also would show at trial that the $190,000—which the Plaintiff had transferred to A. Stein weeks prior to the date the parties supposedly entered into the oral contract—was a no-strings attached cash infusion meant to satisfy working capital needs until the show could air (or, at the very least, was simply a loan). But we should never get to trial because the claims are dead on arrival.

## STATEMENT OF ALLEGED FACTS

A. Stein is a wholesale meat supplier located in Brooklyn, New York. *See* Cmpl. ¶ 7. A. Stein owns two trademarks associated with its "Brooklyn Burger" hamburgers: the brand

name and logo.  *Id.* ¶ 33; Mufich Decl. Ex. A (USPTO registration of the brand name) and Ex. B
(USPTO registration status of the logo).  Mora and Buxbaum co-own A. Stein.  Cmpl. ¶¶ 8-9.

*A. Stein Agrees to Be Filmed for "The Profit"*

A. Stein was struggling financially in 2013.  Cmpl. ¶¶ 17-18.  It reached out to the
Plaintiff, the host of the reality television series "The Profit," with the hope that the Plaintiff
could develop a business plan to resolve its financial difficulties.  Cmpl. ¶¶ 13, 17-20.  The
Plaintiff agreed to assist A. Stein and spent "considerable time" personally reviewing its business
operations and finances.  Cmpl. ¶¶ 16-18.  The episode of The Profit featuring A. Stein aired on
March 4, 2014 (the "Episode").  Cmpl. ¶ 1.

*The Plaintiff and A. Stein Discuss the Potential Sale of the Brooklyn Burger Brand*

The Plaintiff claims that he entered into an enforceable "oral agreement" with A.
Stein on-camera for the sale of the Brooklyn Burger brand.  Cmpl. ¶¶ 1, 21, 23, 31.  The sole
allegation in the complaint for that contention is an incomplete transcript excerpt from the
Episode.  Cmpl. ¶¶ 21-23; 31.  Mora generically states in the excerpt that A. Stein will do
"whatever it takes" in response to the Plaintiff's suggestion that he "buy Brooklyn Burgers":

> Mora:  We need money for payroll and for our working capital.
> That's very important at this point because we want to be here
> tomorrow.
>
> Lemonis:  How much do you need?
>
> Mora: About $200,000.
>
> *       *       *       *
>
> Lemonis:  You know I can't just give you the money.  I can't just
> write you a check and give you a gift, as much as I like you guys.
> I'm not a consultant.  I do things to save jobs and to make money.
> I don't just hand money out.  And so in order for me to give you
> that money I'm gonna need to get a return on my money.  And the

only thing that I can think of is that I buy Brooklyn Burgers from
you. And I'll repackage it and I'll get it back on its feet.

Mora: We're willing to do whatever it takes.

Cmpl. ¶ 21. The parties later allegedly reduced the amount to $190,000. Cmpl. ¶ 23. The

Plaintiff says that these are the full terms of the purported sale. *See* Cmpl. ¶¶ 1; 21-23.

### *The Plaintiff Wired A. Stein $190,000 in Two Installments*

The Plaintiff wired A. Stein $100,000 in November 2013 and $90,000 in January

2014. Cmpl. ¶¶ 2, 23-24. The money was intended for payroll and working capital. *Id.* The

Plaintiff does not allege that the funds were to be held in escrow pending the sale. *See generally*

Cmpl. He also does not identify the bank account to which he wired the funds. *Id.*

The Plaintiff says that A. Stein failed to turn over the Brooklyn Burger trademarks

after he wired the funds. Cmpl. ¶ 2. But he also says that A. Stein referred to the money as a

"loan" in response to his demands and offered to "return the money". Cmpl. ¶¶ 2, 27.

The Plaintiff refused to accept the return of the $190,000. Cmpl. ¶¶ 27-28.

Instead he commenced this action.

### *The Complaint*

The complaint asserts four causes of action against A. Stein, Mora, and Buxbaum:

(i)  Breach of contract seeking specific performance of A. Stein's purported
    obligation to deliver the Brooklyn Burger brand (against A. Stein only),
    *see* Cmpl. ¶¶ 30-38 and p. 9;

(ii)  Preliminary and permanent injunction prohibiting A. Stein from
    transferring its interest in the Brooklyn Burger brand (against A. Stein
    only), *see* Cmpl. ¶¶ 39-46 and p. 11;

(iii)  Conversion and replevin of the Brooklyn Burger brand, or, alternatively,
    conversion of $190,000 (against A. Stein, Mora, and Buxbaum), *see* Cmpl.
    ¶¶ 47-51 and p. 12; and

(iv)    Unjust enrichment for withholding the Brooklyn Burger brand (against A. Stein, Mora, and Buxbaum), *see* Cmpl. ¶¶ 52-56 and p. 13.

*The Name Brooklyn Burger Is a Federally-Registered Trademark*

The name "Brooklyn Burger" is a federally-registered trademark. Mufich Decl. Ex. A (USPTO registration). The United States Patent and Trademark Office ("USPTO") registration number for the Brooklyn Burger standard character trademark is 3652775, serial number 76693496. *Id.*

A. Stein has also applied for trademark registration of the Brooklyn Burger logo. Mufich Decl. Ex. B (USPTO registration status for the logo). The USPTO serial number for the Brooklyn Burger logo is 77750645. *Id.*

A. Stein assigned a security interest in the trademarked name "Brooklyn Burger" in 2012 to its primary lender, FCC, LLC d/b/a First Capital ("First Capital"). Mufich Decl. Ex. C (USPTO-filed security agreement). The security agreement with First Capital is recorded with the USPTO. *Id.* The security agreement expressly states that A. Stein will not "assign, transfer, encumber, or otherwise dispose" of its Brooklyn Burger trademark, "or any interest therein," without First Capital's "prior written consent." *Id.* § 3(f).[1]

The Plaintiff surely knew of First Capital's rights in the trademarked name, as he conducted an "audit" of A. Stein's financial information, and in any event was on constructive notice via the USPTO filing. Cmpl. ¶ 20. But the Plaintiff does not allege that the parties agreed to seek (or ever sought) First Capital's written approval of the purported sale of Brooklyn Burger. *See generally* Cmpl. Indeed, the complaint makes no reference to First Capital's security interest in the Brooklyn Burger brand at all. *Id.*

---

[1] The Court can consider these facts on this motion. *See infra* at 6-7.

ARGUMENT

I.

LEGAL STANDARD.

To survive a motion to dismiss pursuant to FED. R. CIV. P. 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009) (quotations omitted). "Threadbare recitals" and "naked assertion[s]" that are "supported by mere conclusory statements" are not entitled to the assumption of truth and cannot defeat a motion to dismiss. *Id.*; *Interpharm, Inc. v. Wells Fargo Bank, Nat'l Ass'n*, 655 F.3d 136, 141 (2d. Cir. 2011).

Courts may consider facts of which judicial notice may be taken when adjudicating a motion to dismiss pursuant to Rule 12(b)(6). *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007). Those facts include the "official records" of the USPTO. *See Kaplan, Inc. v. Yun*, 2014 WL 1689040, at *1 (S.D.N.Y. Apr. 30, 2014).

Official records of the USPTO include trademark registration. *See Telebrands Corp. v. Del Labs., Inc.*, 719 F. Supp. 2d 283, 287 (S.D.N.Y. 2010) (considering the fact that a trademark is registered on motion to dismiss); *Duckett v. Ramela Distrib. Inc.*, 2012 WL 4336165, at *1-2 (S.D.N.Y. Sept. 18, 2012) (considering what trademarks have been registered with the USPTO on motion to dismiss).

Official records that the Court may consider on this motion also include USPTO filings. *See Kaplan, Inc.*, 2014 WL 1689040, at *1 (considering trademark application filed with the USPTO and subsequent USPTO decisions on that application on motion to dismiss); *Telebrands Corp.*, 719 F. Supp. 2d at 287-88 (considering USPTO patent application and subsequent USPTO decision on that application on motion to dismiss).

This case law demonstrates that this Court may take judicial notice of the federal trademark registration of the name "Brooklyn Burger", the federal trademark registration status of the Brooklyn Burger logo, and the terms of the security agreement filed with the USPTO. *See* Mufich Decl. Exs. A-C.

II.

THE PLAINTIFF'S BREACH OF
CONTRACT CLAIM AGAINST
A. STEIN FAILS AS A MATTER OF LAW.

A.     The Lanham Act Precludes an Oral Sale of the Brooklyn Burger Trademarks.

The Plaintiff's claim that A. Stein sold him the "Brooklyn Burger brand" pursuant to an alleged oral contract is barred by the Lanham Act as an unenforceable oral assignment. Cmpl. ¶¶ 1, 21-23, 31.

The term "brand" means "trademark." *See* BLACK'S LAW DICTIONARY (9th ed. 2009), "brand" (defining "brand" as "trademark[]"); 1 MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION § 4:18 (4th ed.) ("The term 'brand name' . . . is often used in the legal world as a colloquial way to refer to a trademark."); MERRIAM-WEBSTER'S DICTIONARY, "brand", *available online at* http://www.merriam-webster.com/dictionary/brand ("[A] mark made . . . to attest manufacture or quality or to designate ownership . . . a printed mark made for similar purposes: TRADEMARK").

Pursuant to the Lanham Act, any "assignment" of a federally-registered trademark is unenforceable unless it is made "in writing duly executed". *See* 15 U.S.C. § 1060(a)(3); *Fed. Treasury Enter. Sojuzplodoimport v. SPI Spirits Ltd.*, 726 F.3d 62, 73-75 (2d Cir. 2013). The Lanham Act writing requirement similarly applies to an assignment of a trademark "for which an application to register has been filed." *See* 15 U.S.C. § 1060(a)(1), (3)

A sale of a trademark is a form of an assignment and thus is subject to the requirements of the Lanham Act. *See Fed. Treasury Enter. Sojuzplodoimport*, 726 F.3d at 75, *citing* 3 MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION § 18:1 (4th ed.) ("[A]n 'assignment' of a mark is an outright sale of all rights in that mark."); *Prince of Peace Enters., Inc. v. Top Quality Food Mkt., LLC*, 760 F. Supp. 2d 384, 391 (S.D.N.Y. 2011) ("In addition to the requirements for assignment under contract law, assignment of a trademark under the Lanham Act requires [a] sale or transfer of *all* rights in the mark . . .") (emphasis in original).

The Plaintiff admits that the alleged agreement for the sale of the "Brooklyn Burger brand," *i.e.*, the trademarks, is oral. *See, e.g.*, Cmpl. ¶¶ 21-23, 31. The name "Brooklyn Burger" is a federally-registered trademark. Mufich Decl. Ex. A (USPTO registration). A. Stein has applied for federal trademark registration of the Brooklyn Burger logo. *Id.* Ex. B (USPTO registration status for the logo).

The Lanham Act is fatal to the Plaintiff's alleged oral agreement and the Plaintiff's claim for specific performance of that agreement must be dismissed.

B.      The Alleged Oral Contract Is
        Unenforceable Pursuant to N.Y. U.C.C. § 1-206.

New York's U.C.C. Statute of Frauds for "personal property" also precludes specific performance of the purported oral agreement. That statute provides that a party cannot enforce a contract for the sale of personal property worth over $5,000 absent a signed writing:

> [A] contract for the sale of personal property is not enforceable ...
> beyond five thousand dollars in amount or value of remedy unless
> there is some writing which indicates that a contract for sale has
> been made between the parties at a defined or stated price,
> reasonably identifies the subject matter, and is signed by the party
> against whom enforcement is sought …

N.Y. U.C.C. § 1-206(1).

"[P]ersonal property" under Section 1-206(1) includes intellectual property such as trademarks and copyrights. *See Grappo v. Alitalia Linee Aeree Italiane, S.p.A.*, 56 F.3d 427, 431 (2d Cir. 1995) (holding § 1-206 applied to "trademarks" and other "general intangibles"); *see also Mellencamp v. Riva Music Ltd.*, 698 F. Supp. 1154, 1163 (S.D.N.Y. 1988) (holding § 1-206 applied to alleged oral agreement to transfer copyright).

The Plaintiff alleges that A. Stein orally agreed to sell him the Brooklyn Burger trademarks in exchange for $190,000. Cmpl. ¶¶ 1, 21-23. He seeks specific performance of that agreement. Cmpl. p. 9. Section 1-206(1) bars his claim as a matter of law. *See* N.Y. U.C.C. § 1-206(1); *Grappo*, 56 F.3d at 431; *Mellencamp*, 698 F. Supp. at 1163.

C.      A. Stein Never Accepted Any Offer from the Plaintiff.

Even assuming the Lanham Act and New York law did not render the Plaintiff's contract claim deficient as a matter of law, it still must fail because A. Stein never accepted any offer from the Plaintiff.

The Plaintiff must demonstrate "an offer, acceptance of the offer, consideration, mutual assent, and an intent to be bound" in order to establish the existence of an enforceable oral contract. *See Prestige Brands Inc. v. Guardian Drug Co.*, 951 F. Supp. 2d 441, 446 (S.D.N.Y. 2013) (dismissing contract claim where third party plaintiff failed to sufficiently allege that defendant "ever consented to enter into a contract").

Acceptance of an offer must be "clear, unambiguous, and unequivocal." *Transition Investments, Inc. v. The Allen O. Dragge, Jr. Family Trust*, 2012 WL 1848875, at *6-7 (S.D.N.Y. May 21, 2012); *King v. King*, 208 A.D.2d. 1143, 1144, 617 N.Y.S.2d 593, 593 (3rd Dep't 1994) (same).

As a practical matter, "for all but the simplest of transactions, the burden of establishing the terms of the verbal contract . . . presents a formidable obstacle to its enforcement." *Charles Hyman, Inc. v. Olsen Indus., Inc.*, 227 A.D.2d 270, 275, 642 N.Y.S.2d 306, 309-10 (1st Dep't 1996) (alleged oral agreement to the eventual merger of the parties' businesses was unenforceable due to indefiniteness). This burden is "particularly significant where specific performance is sought." *See Cobble Hill Nursing Home, Inc. v. Henry and Warren Corp.*, 74 N.Y.2d 475, 482, 548 N.Y.S.2d 920, 923 (1989). The Plaintiff's claim fails because he does not (and cannot) meet his burden here.

The sole allegation in the complaint for the Plaintiff's contention that A. Stein assented to the sale of the Brooklyn Burger trademarks is this: the Plaintiff, on camera during filming, off-handedly suggests that "the only thing that [he] can think of" as an investment in A. Stein is that he "buy Brooklyn Burgers". Mora generically responds that A. Stein is "willing to do whatever it takes." Cmpl. ¶¶ 21-23, 31.

Even assuming, as we must on this motion, that this exchange was anything more than a dramatization for the show, all parties understood that A. Stein could not sell the trademarked name on the spot—it needed to get First Capital's consent to any sale. *See* Mufich Decl. Ex. C § 3(f) (USPTO-filed security agreement). At best, A. Stein's response means that it would speak to First Capital, and consider a potential sale of the Brooklyn Burger brand if First Capital would grant its consent—*i.e.*, an "agreement to agree." But it is black-letter law that an agreement to agree is unenforceable. *See Galesi v. Galesi*, 37 A.D.3d 249, 249, 829 N.Y.S.2d 107, 107 (1st Dep't 2007) (dismissing contract claim concerning alleged oral agreement to invest and participate in a joint venture because there was "never a meeting of the minds on all essential terms" beyond price and quantity); *Rouzani v. Rapp*, 203 A.D.2d 446, 448, 610 N.Y.S.2d 600,

601 (2d Dep't 1994) (written agreement to sell a business was "too vague and indefinite to be enforced" because it contained "only the purchase price" and "lacked other essential terms");
*Charles Hyman, Inc.*, 227 A.D.2d at 275-76, 642 N.Y.S.2d at 309-10.

III.

THE PLAINTIFF'S CLAIM FOR AN
INJUNCTION MUST BE DISMISSED BECAUSE IT IS A
FORM OF RELIEF, NOT A SEPARATE CAUSE OF ACTION.

The Plaintiff's claim for an injunction must be dismissed.  An injunction is a form of relief, not a cause of action.  *See Pransky v. Eisner*, 2011 WL 4753455, at *2 n.2 (E.D.N.Y. Sept. 14, 2011) (refusing to address plaintiffs' "claim" for preliminary injunction because it is not a cause of action); *NAS Elecs., Inc. v. Transtech Elecs. PTE Ltd.*, 262 F. Supp. 2d 134, 149 (S.D.N.Y. 2003) (dismissing "claim for a preliminary injunction" because, *inter alia*, it is not a cause of action).

The Plaintiff's claim for an injunction is deficient as a matter of law and must be dismissed.

IV.

THE PLAINTIFF FAILS TO STATE
CLAIMS FOR CONVERSION OR REPLEVIN
AGAINST A. STEIN, MORA, AND BUXBAUM.

The Plaintiff asserts claims for conversion and replevin of the Brooklyn Burger trademarks and, in the alternative, conversion of the $190,000.  Cmpl. ¶¶ 47-51.  The claims are defective as a matter of law no matter how he pleads them.

A.      The Plaintiff's Conversion and Replevin
        Claims Impermissibly Duplicate the Contract Claim.

Conversion and replevin claims pled alongside a breach of contract claim must be dismissed unless the Plaintiff alleges that "a legal duty independent of the contract itself has been

violated". *Spanierman Gallery, PSP v. Love*, 2003 WL 22480055, at *3-4 (S.D.N.Y. Oct. 31, 2003) (dismissing claims for replevin and conversion as duplicative of contract claim), *citing Clark-Fitzpatrick, Inc. v. Long Island R. Co.*, 70 N.Y.2d 382, 521 N.Y.S.2d 653 (1987); *see Usov v. Lazar*, 2013 WL 3199652, at *7-8 (S.D.N.Y. June 25, 2013) (dismissing conversion and replevin claims as duplicative of contract claim).

The independent legal duty must "spring from circumstances extraneous to, and not constituting elements of, the contract". *Spanierman Gallery, PSP*, 2003 WL 22480055, at *3-4.

The analysis is no different when the contract is barred by the Statute of Frauds. *Nasso v. Bio Reference Labs., Inc.*, 892 F. Supp. 2d 439, 446, 454 (E.D.N.Y. 2012) (dismissing contract claim as barred by the Statute of Frauds and dismissing conversion claim as duplicative of contract claim); *Priolo Commc'ns, Inc. v. MCI Telecomms. Corp.*, 248 A.D.2d 453, 454, 669 N.Y.S.2d 376, 377 (2d Dep't 1998) (dismissing contract claim as barred by the Statute of Frauds and dismissing conversion claim as duplicative of contract claim).

The Plaintiff's conversion and replevin claims contend only that he "is entitled to possession of the Brooklyn Burger brand he has bought and paid for" pursuant to the parties' alleged oral agreement. *See* Cmpl. ¶¶ 50-51. He does not allege any independent duty to turn over the Brooklyn Burger brand separate and apart from the duties arising under the parties' purported oral contract. *See generally* Cmpl.

The Plaintiff's conversion and replevin claims are duplicative of his contract claim and must be dismissed. *Nasso*, 892 F. Supp. 2d at 446, 454; *Priolo Commc'ns, Inc.*, 248 A.D.2d at 454, 669 N.Y.S.2d at 377.

B.    The Plaintiff Has Not Alleged a Superior Right to the Brooklyn Burger Brand.

Conversion and replevin also require legal ownership or an immediate superior right of possession to the specific identifiable property in dispute. *See 2 Montauk Highway LLC v. Global Partners LP*, 296 F.R.D. 94, 99 n.11 (E.D.N.Y. 2013) (conversion and replevin claims both require that the plaintiff show a "superior right" of possession to the property at issue).

The only right the Plaintiff has alleged to the Brooklyn Burger brand is by contract. *See generally* Cmpl. As set forth in detail *supra* at 7-11, the Plaintiff has no contractual right to Brooklyn Burger. The Plaintiff's conversion and replevin claims to the brand are insufficient as a matter of law. *Id.*

C.    New York Law Does Not Recognize a Claim for Conversion or
      Replevin of Intangibles, Including Trademarks and Unidentifiable Cash.

The Plaintiff's claims for conversion and replevin of the Brooklyn Burger trademarks and, alternatively, conversion of $190,000, also must be rejected because each seeks to recover intangibles.

New York law does not recognize a claim for conversion or replevin of trademarks or other intangibles. *See Ortega v. Burgos*, 2014 WL 2124957, at *1 (E.D.N.Y. May 22, 2014) (dismissing trademark conversion claim and stating that no identified authority "recognizes trademark conversion"); *Harris v. Coleman*, 863 F. Supp. 2d 336, 345 (S.D.N.Y. 2012) (dismissing claim for conversion of trademark because a "trademark is not tangible personal property, but rather is intangible intellectual property having no existence apart from the good will of the product or service it symbolizes."); *Financial Matters, Inc. v. Pepsico, Inc.*, 1993 WL 378844, at *4 (S.D.N.Y. Sept. 24, 1993) (same); *see also Herman v. 36 Gramercy Park Realty Assocs.*, 2014 WL 1324544, at *12 (N.Y. Sup. Ct. N.Y. Cnty. Apr. 2, 2014) (stating "in order to be recoverable in replevin, property must exist in specie so as to be capable of

identification" and denying replevin of a membership interest in an LLC because it was not "specific property, an identifiable object or a piece of paper, capable of being identified and delivered in kind.").

The Plaintiff's claims for conversion and replevin of the Brooklyn Burger trademarks fail as a matter of law and must be dismissed. *See Ortega*, 2014 WL 2124957, at *1; *Harris*, 863 F. Supp. 2d at 345; *see also Herman*, 2014 WL 1324544, at *12.

The Plaintiff's claim for conversion of $190,000 is similarly deficient. Although money "may be the subject of a conversion claim, it must be specifically identified and segregated". *See Alzheimer's Disease Resource Center, Inc. v. Alzheimer's Disease and Related Disorders Ass'n*, 2013 WL 5960748, at *8 (E.D.N.Y. Nov. 8, 2013).

Conversion claims are routinely dismissed when the complaint does not allege that the money at issue was segregated and/or placed into a specific bank account. *See id.* (dismissing conversion claim because plaintiff did not allege that money at issue was segregated and specifically identifiable); *Double Alpha, Inc. v. Mako Partners, L.P.*, 2000 WL 1036034, at *4 (S.D.N.Y. July 27, 2000) (dismissing conversion claim because plaintiff did not allege that its investment in defendant was a "specific, identifiable, segregated sum of money"); *Auguston v. Spry*, 282 A.D.2d 489, 491, 723 N.Y.S.2d 103, 106 (2d Dep't 2001) (dismissing conversion claim because plaintiff alleged "his [investment] was to be commingled into the corporation's capital" and "[a]s commingled money, his money was incapable of being converted."); *Bahiri v. Madison Realty Capital Advisors, LLC*, 30 Misc.3d 1208(A), 924 N.Y.S.2d 307 (Table), at *2 (N.Y. Sup. Ct. N.Y. Cnty. 2010) (dismissing conversion claim where plaintiff did not plead "a specific account or any segregated funds").

The Plaintiff does not allege that he wired the $190,000 to segregated, identifiable

accounts. *See generally* Cmpl. Nor could he—he admits that the money was wired to A. Stein

for "for payroll and working capital needs," not to keep in escrow pending any purported sale.

Cmpl. ¶¶ 21-24, 32, 48. The Plaintiff fails to state a claim for conversion and replevin of the

$190,000 as a matter of law.

D.     The Plaintiff Waived His Conversion Claim for the
       $190,000 Because He Admits He Allowed A. Stein to Keep the Money.

A claim for conversion under New York law requires that the plaintiff "make[] a

demand for the property." *See Seanto Exps. v. United Arab Agencies*, 137 F. Supp. 2d 445, 451

(S.D.N.Y. 2001) (dismissing conversion claim); *Sawabeh Info. Servs. Co. v. Brody*, 2014 WL

46479, at *12, 17 (S.D.N.Y. Jan. 6, 2014) (dismissing conversion and replevin claims for failure

to allege a demand).

The Plaintiff does not allege that he demanded (and was refused) the return of the

$190,000 from A. Stein, Mora, or Buxbaum. *See generally* Cmpl. This alone dooms his

conversion claim. But the Plaintiff goes further. He waives his conversion claim by alleging

that he affirmatively rejected A. Stein, Mora, and Buxbaum's offer to "return the money". Cmpl.

¶¶ 2, 27. A failure to accept a return of the property waives claims for conversion or replevin of

that property under New York law. *Sawabeh Information Services Co.*, 2014 WL 46479, at *17.

V.

THE PLAINTIFF'S UNJUST
ENRICHMENT CLAIM AGAINST A. STEIN,
MORA, AND BUXBAUM MUST BE DISMISSED.

A.     The Plaintiff Fails to Identify a Breach of a
       Legal Duty Independent of the Alleged Oral Contract.

New York law "prevents a plaintiff from circumventing the reach of the statute of

frauds by asserting a quasi-contract claim, such as quantum meruit or unjust enrichment."
*Huntington Dental & Med. Co. v. Minnesota Mining and Mfg. Co.*, 1998 WL 60954, at *7
(S.D.N.Y. Feb. 13, 1998). The claim survives only if the plaintiff identifies a breach of a legal
duty that arises out of "circumstances extraneous to, and not constituting elements of, the
contract itself". *Brown v. Brown*, 12 A.D.3d 176, 176, 785 N.Y.S.2d 417, 419 (1st Dep't 2004).

A quasi-contract claim fails to identify any independent legal duty when it merely
restates the facts of an unenforceable breach of contract claim. *United Magazine Co. v. Murdoch
Magazines Distrib., Inc.*, 146 F. Supp. 2d 385, 414-15 (S.D.N.Y. 2001).

Like the analysis for conversion and replevin claims, the analysis for a quasi-
contract claim is no different when the contract is barred by the Statute of Frauds. *See id.*
(dismissing unjust enrichment claim that replicated a contract claim barred by the Statute of
Frauds); *United Res. Recovery Corp. v. Ramko Venture Mgmt., Inc.*, 584 F. Supp. 2d 645, 658-59
(S.D.N.Y. 2008) (same); *Brown*, 12 A.D.3d at 176, 785 N.Y.S.2d at 419 (dismissing unjust
enrichment claim that duplicated the breach of contract claim and holding that "[t]he requirement
of a writing may not be circumvented by recasting the action as one seeking damages in tort").

The Plaintiff makes no effort to plead any independent legal duty, nor could he.
He just recycles the same facts asserted for the breach of contract claim. *See* Cmpl. ¶¶ 52-56.
The Plaintiff's unjust enrichment claim must be dismissed.

B.      The Plaintiff Has Failed to State a Claim for Unjust Enrichment
        Against Mora and Buxbaum in Their Individual Capacities.

A claim for unjust enrichment against corporate officers must allege either (i) a
basis for piercing the corporate veil and imposing personal liability upon those officers or (ii)
acts taken by corporate officers independent from, and outside of, their corporate capacity. *See
Usov*, 2013 WL 3199652, at *6 (dismissing unjust enrichment claim against corporate officer);

*Levin v. Kitsis*, 82 A.D.3d 1051, 1053, 920 N.Y.S.2d 131, 134 (2d Dep't 2011) (same);

*Silverman v. Nicholson*, 110 A.D.3d 1054, 1054, 975 N.Y.S.2d 416, 417 (2d Dep't 2013) (same).

The Plaintiff's unjust enrichment claim against Mora and Buxbaum in their individual capacity must be dismissed.  The complaint lacks any allegation that Mora and Buxbaum acted "in anything other than [their] capacity as an officer" of A. Stein.  Nor does the Plaintiff allege any basis for piercing the corporate veil.  *See generally* Cmpl.; *Usov*, 2013 WL 3199652, at *6; *see also Levin*, 82 A.D.3d at 1053, 920 N.Y.S.2d at 134; *Silverman*, 110 A.D.3d at 1054, 975 N.Y.S.2d at 417.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court grant their

motion and dismiss the Plaintiff's claims against them.

Dated: New York, New York
     June 24, 2014

               Respectfully submitted,

               BECKER, GLYNN, MUFFLY, CHASSIN
               & HOSINSKI LLP

               By: _____
                  Jordan E. Stern
                  Michelle R. Mufich
                  299 Park Avenue
                  New York, NY 10171

                  *Attorneys for defendants A. Stein Meat*
                  *Products Inc., Howard Mora, and Alan*
                  *Buxbaum*