UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------ x
MARCUS LEMONIS,                                              :
                                                            :
                                Plaintiff,                   :
                                                            :
                                                            :       **MEMORANDUM AND ORDER**
                    -against-                                :       14-CV-3073(DLI) (RLM)
                                                            :
A. STEIN MEAT PRODUCTS INC., HOWARD                         :
MORA, ALAN BUXBAUM, and KING SOLOMON                        :
FOODS, INC.                                                  :
                                                            :
                                Defendants.                  :
------------------------------------------------------------------ x
**DORA L. IRIZARRY, United States District Judge:**

Plaintiff Marcus Lemonis ("Lemonis") filed the instant action against defendants A. Stein

Meat Products Inc. ("A. Stein Meat"), Howard Mora ("Mora"), Alan Buxbaum ("Buxbaum")

(collectively, the "A. Stein Meat Defendants"), and King Solomon Foods, Inc. ("King

Solomon"), asserting a variety of state law claims arising out of a failed business dealing

between Lemonis and the A. Stein Meat Defendants.  (*See* Compl., Dkt. Entry No. 1.)  Both the

A. Stein Meat Defendants and King Solomon move, pursuant to Rule 12(b)(6) of the Federal

Rules of Civil Procedure, to dismiss the instant action in its entirety (*see* Mem. of L. in Supp. of

the A. Stein Meat Defs.' Mot. to Dismiss ("A. Stein Meats Mem."), Dkt. Entry No. 18; Mem. of

L. in Supp. of King Solomon's Mot. to Dismiss ("King Solomon Mem."), Dkt. Entry No. 23),

which Lemonis opposes (Lemonis Mem. in Opp'n ("Lemonis Opp'n"), Dkt. Entry No. 26).  For

the reasons discussed below, the A. Stein Meat Defendants' motion to dismiss is granted in part

and denied in part and King Solomon's motion to dismiss is granted.

## BACKGROUND[1]

Lemonis is an entrepreneur and host of the television show "The Profit."  (Compl. ¶ 1.)

---

[1]      The Background is taken from the Complaint, unless otherwise noted.

"The Profit" is a reality show broadcasted on CNBC that focusses on saving small businesses. (*Id.* ¶ 6.)  A. Stein Meat is a wholesale meat supplier operating in Brooklyn, New York, that sells various food products, including its trademarked Brooklyn Burger brand of hamburger products. (*Id.* ¶ 7.)  Mora and Buxbaum each own a 50% interest in A. Stein Meat.  (*Id.* ¶¶ 8-9.)

In 2013, A. Stein Meats was struggling financially.  (*Id.* ¶ 17.)  Lemonis evaluated A. Stein Meat's business structure and spent considerable time observing its operations, studying its finances, and speaking with its employees and owners.  (*Id.* ¶ 18.)  On March 4, 2014, CNBC aired an episode of "The Profit" featuring the A. Stein Meat Defendants.  (*Id.* ¶ 17.)  Initially, Lemonis offered to pay Mora and Buxbaum $1 million for a 50% ownership interest in A. Stein Meat.  (*Id.* ¶ 19.)  However, Lemonis uncovered significant undisclosed financial problems, particularly, that A. Stein Meat only had enough cash to remain in business for approximately two more weeks.  (*Id* ¶¶ 20-21.)  Lemonis withdrew his original offer.  (*Id.* ¶ 21.)  Instead, Lemonis offered to purchase the trademarked Brooklyn Burger hamburger brand for $200,000. (*Id.*)  As transcribed from that episode, the parties discussed the following:

| | |
|---|---|
| Mora: | We need money for payroll and for our working capital.  That's very important at this point because we want to be here tomorrow. |
| Lemonis: | How much do you need? |
| | *        *        * |
| Lemonis: | You know I can't just give you the money.  I can't just write you a check and give you a gift, as much as I like you guys.  I'm not a consultant.  I do things to save jobs and to make money.  I don't just hand money out.  And so in order for me to give you that money I'm gonna need to get a return on my money. And the only thing that I can think of is that I buy Brooklyn Burgers from you.  And I'll repackage it and I'll get it back on its feet. |

> Mora:          We're willing to do whatever it takes.

(*Id*.)  Ultimately, at some point off camera, the parties agreed to $190,000.  (*Id.* ¶ 23.)

Prior to the airing of this episode, Lemonis wired a total of $190,000 to A. Stein Meat in two separate transfers:  $100,000 on November 20, 2013; and $90,000 on January 8, 2014.  (*Id.* ¶ 24.)  A. Stein Meat accepted both of the wire transfers.  (*Id.* ¶ 25.)  At the time this action was filed, A. Stein Meat had not transferred any intellectual property rights associated with Brooklyn Burger to Lemonis.  (*Id.* ¶ 26.)  The A. Stein Meat Defendants offered to repay Lemonis the $190,000, which he rejected because, according to Lemonis, the money was not a loan subject to repayment but, rather, payment for the purchase of intellectual property rights.  (*Id.* ¶ 27.)

Notably, ownership of the two Brooklyn Burger trademarks at issue has changed during the course of this litigation.  At the Court's request, the parties provided supplemental briefing to address any potential mootness of Lemonis's claims.  (*See* A. Stein Meat Defs. Supp. Mem., Dkt. Entry No. 33; Lemonis Supp. Opp'n, Dkt. Entry No. 37.)

In 2008, A. Stein Meat obtained a trademark for the Brooklyn Burger character and, in 2009, obtained a second trademark for the Brooklyn Burger logo.[2]  (*See* Exs. A, B attached to the Decl. of Michelle Mufich, Dkt. Entry No. 19.)  On November 12, 2012, long before "The Profit" featured A. Stein Meat, A. Stein Meat granted FCC, LLC, d/b/a First Capital ("First Capital"), its primary lender, a security interest in the two Brooklyn Burger trademarks pursuant to a Patent and Trademark Security Agreement ("Security Agreement") filed with the United

---

[2]    The Court may take judicial notice of official records of the U.S. Patent and Trademark Office on a motion to dismiss.  *See Telebrands Corp. v. Del Labs., Inc.*, 719 F. Supp. 2d 283, 287 (S.D.N.Y. 2010) (relying on a publicly available record on ruling on dismissal); *cf. Island Software and Computer Serv., Inc. v. Microsoft Corp.*, 413 F.3d 257, 261 (2d Cir. 2005) (taking judicial notice of a copyright registration).

States Patent and Trademark Office ("U.S.P.T.O.").[3]  (*See* Security Agreement, attached as Ex. C to the Mulfich Decl.; Decl. of Buxbaum ("Buxbaum Decl.") ¶ 2, Dkt. Entry No. 35.)  In the Security Agreement, A. Stein Meat stated that it would not "assign, transfer, encumber, or otherwise dispose" of its Brooklyn Burger trademarks, "or any interest therein," without First Capital's "prior written consent."  (Security Agreement § 3(f).)  All of these documents were publicly available on the U.S.P.T.O.'s website at the time of the filming of the episode that featured the A. Stein Meat Defendants.

On October 14, 2014, after A. Stein Meat had defaulted on its debt, First Capital foreclosed on all of A. Stein Meat's secured assets, including the two Brooklyn Burger trademarks.  (Buxbaum Decl. ¶¶ 3-4.)  Subsequently, First Capital sold the two Brooklyn Burger trademarks to Hercules Food Corporation ("Hercules").  (*Id.* ¶ 4.)  First Capital and Hercules, non-parties in this action, provided the Court with a copy of the bill of sale, but were unwilling to provide the Court with a copy of the sale contract.  (*See* Supp. Decl. of Michelle Mufich ("Supp. Mufich Decl.") ¶ 4, Dkt. Entry No. 34.)  According to Lemonis, King Solomon has a controlling interest in Hercules.  (*See* Lemonis Supp. Opp'n. at 3.)

## DISCUSSION

### I.    Legal Standard for Dismissal

Under Rule 8(a) of the Federal Rules of Civil Procedure, pleadings must contain a "short and plain statement of the claim showing that the pleader is entitled to relief."  Pleadings are to give the defendant "fair notice of what the claim is and the grounds upon which it rests."  *Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 346 (2005) (quoting *Conley v. Gibson*, 355 U.S. 41, 47

---

[3]    They Court may take judicial notice of the Security Agreement as it was publicly filed with the U.S.P.T.O. *See, e.g.*, *Kaplan, Inc. v. Yun*, 2014 WL 1689040, at *1-2 (S.D.N.Y. Apr. 30, 2014) (considering trademark application and subsequent decisions of the U.S.P.T.O. filed with the U.S.P.T.O. when ruling on a motion to dismiss).

(1957), overruled in part on other grounds by *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)).

"The pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it

demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v.*

*Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555).  "A pleading that offers

'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not

do.'" *Id*. (quoting *Twombly*, 550 U.S. at 555).

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a defendant may move, in

lieu of an answer, for dismissal of a complaint for "failure to state a claim upon which relief can

be granted."  To resolve such a motion, courts "must accept as true all [factual] allegations

contained in a complaint," but need not accept "legal conclusions."  *Iqbal*, 556 U.S. at 678.  For

this reason, "[t]hreadbare recitals of the elements of a cause of action, supported by mere

conclusory statements, do not suffice" to insulate a claim against dismissal.  *Id*.  "[A] complaint

must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible

on its face.'"  *Id.* (quoting *Twombly*, 550 U.S. at 570).  Notably, courts may only consider the

complaint itself, documents that are attached to or referenced in the complaint, documents that

the plaintiff relied on in bringing suit and that are either in the plaintiff's possession or the

plaintiff knew of when bringing suit, and matters of which judicial notice may be taken.  *See,*

*e.g.*, *Roth v. Jennings*, 489 F.3d 499, 509 (2d Cir. 2007).

## II.      A. Stein Meat Defendants' Motion to Dismiss

### A.       Breach of Contract

The A. Stein Meat Defendants contend that Lemonis's contract claim fails as a matter of

law because the agreement at issue was an oral agreement and both the Lanham Act and New

York State contract law require written agreements for such sales.  (A. Stein Meat Defs. Mem. at

7-11.)  Plaintiff counters by arguing that the videotaped recording of the conversation between Lemonis and Mora satisfies the writing requirement.  (Pl.'s Opp'n at 4-7.)

Under the Lanham Act, the sale of a trademark is considered an "assignment" of that mark.  Indeed, "an assignment 'is an outright sale of *all rights* in that mark.'"  *See Fed. Treasury Enter. Sojuzplodoimport v. SPI Spirits Ltd.*, 726 F.3d 62, 75 (2d Cir. 2013) (emphasis in original) (quoting 3 McCarthy On Trademarks and Unfair Competition § 18:1 (4th ed.)); *accord Prince of Peace Enters., Inc. v. Top Quality Food Mkt., LLC*, 760 F. Supp. 2d. 384, 391 (S.D.N.Y. 2011) ("In addition to the requirements for assignment under contract law, assignment of a trademark under the Lanham Act requires [a] sale or transfer of *all* rights in the mark . . . ." (emphasis in original)).  Furthermore, any "assignment" of a federally registered trademark is unenforceable unless it is made "in writing duly executed."  15 U.S.C. § 1060(a)(3); *see also Fed. Treasury Enter. Sojuzplodoimport*, 726 F.3d at 73-75 (declining to find an assignment of a trademark as there was no clear written agreement between the parties regarding the assignment).  The Lanham Act writing requirement extends to the assignment of a trademark "for which an application to register has been filed."  15 U.S.C. § 1060(a)(1), (3).

To the extent that the alleged agreement can be considered an "assignment" of the Brooklyn Burger trademarks, the agreement fails to meet the requirements for such an assignment under the Lanham Act.  Contrary to Lemonis's argument, the videotaped recording does not satisfy the Lanham Act's writing requirement.  An electronic signature to a written agreement will satisfy the Lanham Act's writing requirement, *see* 15 U.S.C. § 7001(a); however, this exception for electronic signatures does not negate the underlying requirement that the parties execute a contract "in writing."  Lemonis provided no authority for such an assertion, nor has the Court located any.  Furthermore, the post-recording email chain initiated by Lemonis,

6

with the subject line, "Obviously your [sic] not responding," (Email Chain attached as Ex. A. to the Decl. of Lisa A. Gilbreath ("Gilbreath Decl."), Dkt. Entry No. 27), does not satisfy the Lanham Act writing requirement.  This email chain consists of Lemonis's views on what went wrong with a prior agreement, and not the actual terms of the prior agreement, which, notably, Lemonis classifies as an "oral agreement."  (*Id.*)  Under these circumstances, wherein an "unequivocal transfer of title" is absent from the document at issue, courts decline to find the writing requirement satisfied.  *See Fed. Treasury Enter. Sojuzplodoimport*, 726 F.3d at 73-75 (holding that the Lanham Act writing requirement was not satisfied by documents that referred to "assigned property" rather than the particular trademarks at issue).

Moreover, Lemonis's contract claim is unenforceable under New York law.  Under New York's Statute of Frauds, codified in New York's Uniform Commercial Code ("U.C.C."), "a contract for the sale of personal property is not enforceable by way of action or defense beyond five thousand dollars in amount or value of remedy unless there is some writing which indicates that a contract for sale has been made between the parties at a defined or stated price, reasonably identifies the subject matter, and is signed by the party against whom enforcement is sought or by his authorized agent."  N.Y. U.C.C. § 1-206(1).  Intellectual property is considered "personal property" and, thus, sales of intellectual property are subject to the § 1-206(1) writing requirement.  *See Grappo v. Alitalia Linee Aeree Italiane, S.p.A.*, 56 F.3d 427, 431 (2d Cir. 1995) (concluding that sales of trademarks and other "general intangibles" are subject to § 1-206(1)).  Lemonis's reliance on U.C.C. § 1-206(3) and N.Y. Gen. Oblig. L. §5-701(b)(3) is misplaced as a careful reading of those provisions indicates that they are inapplicable on their face to the alleged agreement at issue between the parties in this action.

Finally, the previously mentioned email chain that Lemonis initiated does not change the result.  The only statement on that chain from one of the defendants is as follows:

> Morning Marcus,
>
> We have been very busy due to all the holidays that are coming up. Between Easter and Passover it's been truly crazy.  Whatever you have to send us you can send it directly to Alan and myself.  If we do not speak before, have a happy Easter and Passover.
>
> Howard

(Gilbreath Decl. Ex. A.)  This email chain does not constitute a writing, signed by any of the A. Stein Defendants, that details the elements of the agreement.  Thus, this email chain does not prevent dismissal of the contract claim for failure to meet the writing requirements of the U.C.C. Accordingly, the contract claim (Count 1) is dismissed.

### B.   Preliminary Injunction

In response to the Court's request for supplemental briefing, Lemonis conceded that his claim for a preliminary injunction was moot.  Regardless of its purported mootness, it is well settled that an "[i]njunction is not a separate cause of action; it is a remedy."  *Chiste v. Hotels.com L.P.*, 756 F. Supp. 2d 382, 407-08 (S.D.N.Y. 2010) (collecting cases).  Accordingly, the preliminary injunction claim (Count II) is dismissed.

### C.   Conversion and Replevin

Lemonis asserts a claim for conversion and replevin seeking an order granting Lemonis immediate possession of the Brooklyn Burger intellectual property rights or, alternatively, an order granting no less than $190,000 in damages, plus interest.  (Compl. ¶¶ 47-51.)  First, it is well settled, and quite easy to determine with minimal legal research, that there is no action for trademark conversion.  *See, e.g.*, *Ortega v. Burgos*, 2014 WL 2124957, at *1 (E.D.N.Y. May 22, 2014) (dismissing trademark conversion claim because "not only has this Court been unable to

find any authority that recognizes trademark conversion, the leading treatise on trademark law states that, '[e]very court to consider such a claim has rejected it.'" (quoting McCarthy on Trademarks and Unfair Competition § 25:9.50 (4th ed. 2014))).

Second, with respect to the damages Lemonis seeks, a party seeking monetary damages for conversion must prove that: "(1) the party charged has acted without authorization; and (2) exercised dominion or a right of ownership over property belonging to another; (3) the rightful owner makes a demand for the property; and (4) the demand for the return is refused." *Sawabeh Info. Servs. Co. v. Brody*, 2014 WL 46479, at *12 (S.D.N.Y. Jan. 6, 2014). Lemonis's complaint is void of any allegations as to a demand for the $190,000. Indeed, Lemonis has waived any such claim as he, in his own words, rejected the A. Stein Meat Defendants' offer to return the money. (Compl. ¶¶ 2, 27.) Under these circumstances, courts dismiss such claims. *See Sawabeh Info. Servs.*, 2014 WL 46479, at *17 (dismissing conversion and replevin claim as defendant "waived her claims as to conversion and replevin by failing to accept plaintiffs' offer to return her personal items"). Accordingly, the conversion and replevin claim (Count III) is dismissed.

### D.    Unjust Enrichment

Lemonis asserts a claim for unjust enrichment against the A. Stein Defendants. (Compl. ¶¶ 52-56.) "The basic elements of an unjust enrichment claim in New York require proof that (1) defendant was enriched, (2) at plaintiff's expense, and (3) equity and good conscience militate against permitting defendant to retain what plaintiff is seeking to recover." *Briarpatch Ltd., LP v. Phoenix Pictures, Inc.*, 373 F.3d 296, 306 (2d Cir. 2004). Lemonis has stated a claim for unjust enrichment.

9

The A. Stein Meat Defendants contend that the Court must dismiss the unjust enrichment claim because it is duplicative of his contract claim.  (*See* A. Stein Meat Defs. Mem. at 15-16.) The general rule in New York is that "[t]he existence of a *valid and enforceable* written contract governing a particular subject matter ordinarily precludes recovery in quasi contract for events arising out of the same subject matter."  *Clark-Fitzpatrick, Inc. v. Long Island R.R. Co.*, 70 N.Y.2d 382, 388 (N.Y. 1987) (emphasis added and citations omitted).  If a party fails to prove a valid, enforceable contract, however, the court may nonetheless allow recovery in quantum meruit for claims arising from the same subject matter as that contract in order to prevent unjust enrichment.  *Rule v. Brine Inc.*, 85 F.3d 1002, 1011, 1014 (2d Cir. 1996) (citation omitted); *Command Cinema Corp.* v. *VCA Labs, Inc.*, 464 F. Supp. 2d 191, 200 (S.D.N.Y. 2006) (citing *Integral Control Sys. Corp. v. Consol. Edison Co.*, 990 F. Supp. 295, 303 (S.D.N.Y. 1998)).  The Second Circuit has applied this rule to permit plaintiffs to recover on quantum meruit claims when the express contract is unenforceable under the Statute of Frauds.  *See Grappo v. Alitalia Linee Aeree Italiane*, 56 F.3d 427, 433 (2d Cir. 1995) (holding that a plaintiff barred from enforcing a contract by the statute of frauds may nonetheless recover in quantum meruit to recover the value of the work performed); *Marcella v. ARP Films, Inc.*, 778 F.2d 112, 117 (2d Cir. 1985) (explaining that under New York law, when an express contract is unenforceable by reason of the statute of frauds, a plaintiff may seek recovery under a claim of quantum meruit) (citation omitted); *see also L. Fatato, Inc. v. Miller Brewing Co.*, 582 F. Supp. 1377, 1379 (E.D.N.Y. 1984) ("A contract that is unenforceable under the state of frauds may give rise to such recovery on the basis of an implied contract.") (citation omitted).  Thus, the Court declines to dismiss Lemonis's unjust enrichment claim on this ground.

Finally, Mora and Buxbaum urge the Court to dismiss the unjust enrichment claim against them in their individual capacities as there are no allegations that they acted in any capacity other than their capacities as officers of A. Stein Meat.  (A. Stein Meat Defs. Mem. at 17.)  Lemonis contends that, without discovery, he would be unable to determine whether his unjust enrichment claim against Mora and Buxbaum should remain.  The Court agrees with Lemonis that dismissal on this ground is premature.  Accordingly, Lemonis's claim for unjust enrichment (Count IV) survives dismissal.

## III.  King Solomon's Motion to Dismiss

King Solomon moves to dismiss the only claim Lemonis asserted against it—tortious interference with contract—on the ground that such a claim cannot be asserted against it when there is no valid enforceable contract among Lemonis and the A. Stein Meat Defendants.  (*See* King Solomon Mem. at 3-4.)  Under New York law, a tortious interference of contract claim must allege "(a) that a valid contract exists; (b) that a 'third party' had knowledge of the contract; (c) that the third party intentionally and improperly procured the breach of the contract; and (d) that the breach resulted in damage to the plaintiff." *Albert v. Loksen,* 239 F.3d 256, 274 (2d Cir. 2001).  It is well settled that "[t]here can be no recovery unless there was a valid and enforceable contract . . . ."  *AIM Intern. Trading, LLC v. Valcucine S.p.A.*, 2003 WL 21203503, at *4 (S.D.N.Y. May 22, 2003) (citing *Durante Bros. Constr. Corp. v. College Point Sports Assoc., Inc.*, 207 A.D.2d 379, 380 (2d Dep't 1994)).  As set forth above, Lemonis is unable to demonstrate the existence of a valid, enforceable contract.  Accordingly, the tortious interference with contract claim (Count V) is dismissed.

**CONCLUSION**

For the reasons set forth above, Counts I, II, III, brought against defendants A. Stein Meat Products, Inc., Howard Mora, and Alan Buxbaum are dismissed and the sole count against King Solomon Foods, Inc., Count V, is also dismissed.    As to the remaining count, Count IV, for unjust enrichment against defendants A. Stein Meat Products, Inc., Howard Mora, and Alan Buxbaum, this matter is referred to the magistrate judge for further pretrial proceedings, including discovery and settlement discussions.


SO ORDERED.

Dated: Brooklyn, New York
       March 6, 2015

                                          _____
                                                    /s/
                                          DORA L. IRIZARRY
                                          United States District Judge

12