UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

MARCUS LEMONIS,

        Plaintiff,

v.

A. STEIN MEAT PRODUCTS INC.,
HOWARD MORA, ALAN BUXBAUM,
And KING SOLOMON FOODS, INC.,

        Defendants.

Index No. 14-cv-03073 (DLI) (RLM)

**ANSWER AND COUNTERCLAIM**

      Defendants A. Stein Meat Products Inc. ("A. Stein Meats"), Howard Mora ("Mora"), and Alan Buxbaum ("Buxbaum" and, collectively with Mora and A. Stein Meats, the "A. Stein Defendants"), by their attorneys, Becker, Glynn, Muffly, Chassin & Hosinski, LLP, hereby answer the complaint as follows:

      1.    The A. Stein Defendants deny the allegations as set forth in paragraph 1 of the complaint.

      2.    The A. Stein Defendants deny the allegations set forth in paragraph 2 of the complaint.

      3.    The A. Stein Defendants deny the allegations set forth in the first sentence of paragraph 3 of the complaint. The A. Stein Defendants lack information sufficient to form a belief as to the truth or falsity of the remaining allegations set forth in paragraph 3 of the complaint.

4. The A. Stein Defendants deny the allegations set forth in the first and last sentence of paragraph 4 of the complaint. The A. Stein Defendants lack information sufficient to form a belief as to the truth or falsity of the remaining allegations set forth in paragraph 4 of the complaint.

5. The allegations set forth in paragraph 5 of the complaint purport to state a legal conclusion, to which no response is required; to the extent a response is required, the A. Stein Defendants deny the allegations set forth in paragraph 5 of the complaint.

6. The A. Stein Defendants lack information sufficient to form a belief as to the truth or falsity of the allegations set forth in paragraph 6 of the complaint.

7. The A. Stein Defendants admit that A. Stein Meats is a domestic business corporation organized under the laws of New York. The A. Stein Defendants deny the remaining the allegations set forth in paragraph 7 of the complaint.

8. Mora admits the allegations set forth in paragraph 8 of the complaint.

9. Buxbaum admits the allegation set forth in the first sentence of paragraph 9 of the complaint. Buxbaum denies the remaining allegations set forth in paragraph 9 of the complaint.

10. The A. Stein Defendants lack information sufficient to form a belief as to the truth or falsity of the allegations set forth in paragraph 10 of the complaint.

11. The allegations set forth in paragraph 11 of the complaint purport to state a legal conclusion, to which no response is required; to the extent a response is required, the A. Stein Defendants deny the allegations set forth in paragraph 11 of the complaint.

12. The allegations set forth in paragraph 12 of the complaint purport to state a legal conclusion, to which no response is required; to the extent a response is required, the A. Stein Defendants deny the allegations set forth in paragraph 12 of the complaint.

13. The A. Stein Defendants lack information sufficient to form a belief as to the truth or falsity of the allegations set forth in paragraph 13 of the complaint.

14. The A. Stein Defendants deny the allegations set forth in paragraph 14 of the complaint.

15. The A. Stein Defendants lack information sufficient to form a belief as to the truth or falsity of the allegations set forth in paragraph 15 of the complaint.

16. The A. Stein Defendants deny the allegations set forth in paragraph 16 of the complaint.

17. The A. Stein Defendants admit that the A. Stein Defendants appeared on an episode of "The Profit." The A. Stein Defendants deny the remaining allegations set forth in paragraph 17 of the complaint.

18. The A. Stein Defendants admit that Lemonis visited the offices of A. Stein Meats. The A. Stein Defendants deny the remaining allegations set forth in paragraph 18 of the complaint.

19. The A. Stein Defendants deny the allegations set forth in paragraph 19 of the complaint.

20. The A. Stein Defendants deny the allegations set forth in paragraph 20 of the complaint.

21. The A. Stein Defendants deny the allegations set forth in paragraph 21 of the complaint.

22. The A. Stein Defendants deny the allegations set forth in paragraph 22 of the complaint.

23. The A. Stein Defendants deny the allegations set forth in paragraph 23 of the complaint.

24. The A. Stein Defendants deny the allegations set forth in paragraph 24 of the complaint.

25. The A. Stein Defendants deny the allegations set forth in paragraph 25 of the complaint.

26. The A. Stein Defendants deny the allegations set forth in paragraph 26 of the complaint, except admit that the A. Stein Defendants have not transferred to Lemonis any of the rights, intellectual property, or other assets associated with the Brooklyn Burger brand.

27. The A. Stein Defendants deny the allegations set forth in paragraph 27 of the complaint.

28. The A. Stein Defendants lack information sufficient to form a belief as to the truth or falsity of the allegations set forth in paragraph 28 of the complaint.

29. The A. Stein Defendants deny the allegations set forth in the first and second sentence of paragraph 29 of the complaint. The A. Stein Defendants lack information sufficient to form a belief as to the truth or falsity of the remaining allegations set forth in paragraph 29 of the complaint.

*Paragraphs 30-51 of the complaint, constituting Counts I-III, have been dismissed by Court Order dated March 6, 2015*

### COUNT IV
**Unjust Enrichment**

52. The A. Stein Defendants deny the allegations set forth in paragraph 52 of the complaint.

53. The A. Stein Defendants deny the allegations set forth in paragraph 53 of the complaint.

54. The A. Stein Defendants deny the allegations set forth in paragraph 54 of the complaint.

55. The A. Stein Defendants deny the allegations set forth in paragraph 55 of the complaint.

56. The A. Stein Defendants deny the allegations set forth in paragraph 56 of the complaint.

No response is required to the final paragraphs of Count IV, which describe Lemonis's prayer for relief and request for judgment. To the extent a response is deemed required, the A. Stein Defendants deny that the relief requested is either warranted or proper.

## GENERAL DEFENSE

The A. Stein Defendants deny any and all allegations in the complaint not expressly admitted herein and deny that the relief requested by Lemonis in the complaint is warranted or proper.

## AFFIRMATIVE DEFENSES

### *First Affirmative Defense*

The complaint fails to state a claim on which relief may be granted.

### *Second Affirmative Defense*

The claims are barred because granting the relief requested would result in unjust enrichment to Lemonis.

*Third Affirmative Defense*

The claims are barred because granting the relief requested would contravene the contract executed by A. Stein Meats and the producer of The Profit, to which Lemonis is a third party beneficiary.

*Fourth Affirmative Defense*

The claims are barred by waiver.

*Fifth Affirmative Defense*

The claims are barred by estoppel.

**COUNTERCLAIM**

Mora and Buxbaum, by their attorneys, Becker, Glynn, Muffly, Chassin & Hosinski LLP, assert the following counterclaim against Lemonis.

**INTRODUCTION**

1. This claim is about Lemonis's destruction of A. Stein Meats and the hard-earned reputation of its co-owners, Mora and Buxbaum, through malicious and defamatory comments about them.

2. Lemonis defamed Mora and Buxbaum by publicly stating, falsely, that Mora and Buxbaum had agreed to sell him certain trademarks owned by A. Stein Meats for $190,000 but then reneged on the deal after Lemonis wired A. Stein Meats the money. Lemonis knew that his statements were false. Lemonis knew that there was no deal; indeed, Lemonis wired A. Stein Meats the funds, with no strings attached, months in advance of any discussion of the trademarks. Lemonis's comments were made with the malicious and bad faith intent to damage the reputation of Mora and Buxbaum and force them to turn over the trademarks. The comments destroyed Mora and Buxbaum's reputation in the wholesale meat industry, where business is

routinely done on credit and with oral promises. A. Stein Meats was out of business approximately six months after Lemonis's defamatory statements, and co-owners Mora and Buxbaum were left with a worthless company and permanently damaged reputations.

3. Mora and Buxbaum seek damages from Lemonis to compensate them for the substantial harm his defamation caused.

## FACTUAL ALLEGATIONS

4. Lemonis is the host of the reality television series "The Profit."

5. The A. Stein Defendants were filmed for a potential appearance on The Profit on or about the following dates: November 5, 6, 7, 22, and 23, 2013; December 11 and 12, 2013; and February 7, 2014.

6. After filming began in November 2013, A. Stein Meats overdrew its checking account. Lemonis transferred $100,000 to A. Stein Meats to cover the overdraft balance on November 20, 2013.

7. Lemonis subsequently wired A. Stein Meats $90,000 on or about January 8, 2014 to provide additional working capital.

8. Lemonis wired A. Stein Meats the money because he wanted to keep A. Stein Meats afloat until the show could air. Neither A. Stein Meats, Mora or Buxbaum made any promise to Lemonis in exchange for the money. And neither Mora nor Buxbaum personally received or used any of the funds transferred by Lemonis to A. Stein Meats.

9. Lemonis, Mora, and Buxbaum later filmed a simulated negotiation concerning a potential investment by Lemonis in A. Stein Meats in exchange for A. Stein Meats's Brooklyn Burger trademarks. The simulated negotiation is set forth in full in paragraph 21 of Lemonis's complaint.

7

10. The simulated negotiation was not filmed until on or about February 7, 2014—a month or more after Lemonis transferred the funds to A. Stein Meats. The simulated negotiation had nothing to do with the funds Lemonis had wired previously.

11. The episode of The Profit featuring the A. Stein Defendants aired on March 4, 2014.

12. After the episode of The Profit aired, Lemonis pretended that the simulation was real and that A. Stein Meats had actually sold him the Brooklyn Burger trademarks. He manufactured a demand that A. Stein Meats relinquish its rights in the Brooklyn Burger trademarks in exchange for the $190,000 he had wired months before.

13. The A. Stein Defendants refused to cave to Lemonis's manufactured demands.

14. Lemonis began a campaign to destroy the reputation of the A. Stein Defendants and force A. Stein Meats to turn over the Brooklyn Burger trademarks.

15. As part of that campaign, Lemonis used his Facebook account to defame Mora and Buxbaum. For example, on March 5, 2014, Lemonis publicly posted the following comment on his Facebook account:

> We agreed that I would buy brooklyn burger . . . I wired the money the next day on a handshake without paperwork because [Mora and Buxbaum] told me their word was their bond. . . That was a month ago. We still have yet to finish the transfer.

16. This statement is intended to create a false impression that Mora and Buxbaum reneged on an oral agreement after taking Lemonis's money and are not honorable businessmen. It is riddled with falsehoods. First, Lemonis wired the funds well before the simulated negotiations, not the day after, as he states on the Facebook post. Second, the filmed, simulated negotiations had nothing to do with the money he had wired and Lemonis knew that A. Stein Meats had not agreed to sell him anything in those negotiations. Third, the defamation is only

8

made worse by Lemonis's false statement that both Mora and Buxbaum told him that that "their word was their bond" as an inducement to his wiring of the money, implying that Mora and Buxbaum cannot be trusted.

17. Lemonis's public statements damaged Mora's and Buxbaum's reputation and exposed Mora and Buxbaum to public ridicule, degradation, scorn, and disgrace, as evidenced by many of the subsequent third-party comments on Facebook. By falsely stating that Mora and Buxbaum had reneged on an oral agreement made on behalf of A. Stein Meats, and that Mora and Buxbaum did not stand by their word, Lemonis damaged the ability of Mora and Buxbaum to do business in the wholesale meat industry. Sales in the wholesale meat industry are largely made pursuant to oral arrangements and credit. The ability of Mora and Buxbaum to do business on the basis of oral arrangements, which was critical to their ability to function, was permanently damaged.

18. A. Stein Meats lost substantial business after Lemonis published the false statements about Mora and Buxbaum on Facebook, which materially reduced its value to co-owners Mora and Buxbaum. Ultimately A. Stein Meats lost so much business as a result of Lemonis's defamatory statements that it had insufficient revenue to pay its debts. A. Stein Meats's secured lender foreclosed on A. Stein Meats's assets and A. Stein Meats ceased operations. Mora and Buxbaum, co-owners, were left with nothing but their destroyed reputations.

**DEFAMATION (LIBEL)**

19. Mora and Buxbaum repeat and reallege the allegations contained in the preceding paragraphs 1 through 18 as though fully set forth herein.

20. Lemonis made written false statements of fact about Mora and Buxbaum.

9

21. The written false statements of fact about Mora and Buxbaum were defamatory because they exposed Mora and Buxbaum to public ridicule, degradation, scorn, and disgrace, and impugned their integrity and reputation.

22. Lemonis's false and defamatory statements are libelous *per se* because they disparaged the business and professional reputation of Mora and Buxbaum.

23. Lemonis published those false statements of fact on Facebook to countless third parties.

24. Lemonis negligently or, alternatively, maliciously made the defamatory statements about Mora and Buxbaum.

25. Mora and Buxbaum have been damaged because, as a result of Lemonis's defamatory statements, they lost both substantial business and their good reputation in the industry.

## JURY DEMAND

We hereby demand a trial by jury for all matters relating to the claim and counterclaim.

## PRAYER FOR RELIEF

WHEREFORE, Mora and Buxbaum respectfully request the following relief:

A. Damages in an amount to be determined at trial, in an amount not less than $1,000,000;

B. Costs and disbursements;

C. Such other legal or equitable relief that the Court deems just and proper.

Dated: New York, New York
March 27, 2015

>Respectfully submitted,
>BECKER, GLYNN, MUFFLY, CHASSIN
>& HOSINSKI LLP
>
>By: *[signature]*
>Jordan E. Stern
>Michelle R. DeMason
>299 Park Avenue
>New York, NY 10171
>
>*Attorneys for defendants A. Stein Meat Products Inc., Howard Mora, and Alan Buxbaum*